# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3129

———————

Maud Ledhagen Gazal, in her                          *
capacity as the legal personal                       *
representative of the Estate of                       *
Nabil Nasri Gazal,                                   *
                                                     *   Appeal from the United States
            Appellant,                               *   District Court for the
                                                     *   District of Minnesota.
        v.                                           *
Boehringer Ingelheim Pharmaceuticals,                *
Inc.; Pfizer, Inc.; Pharmacia                        *
Corporation; Pharmacia &Upjohn, LLC,                 *
                                                     *
            Appellees.                               *

———————

Submitted: May 10, 2011
Filed: July 28, 2011

———————

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Nabil Gazal filed tort claims and a breach of warranty claim against Boehringer Ingelheim Pharmaceuticals, Inc.; Pfizer, Inc.; Pharmacia Corporation; and Pharmacia & Upjohn Company, LLC (pharmaceutical companies). The district court[1] granted

———————

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, now retired.

summary judgment to the defendants, see In re Mirapex Products Liability Litigation, 735 F. Supp. 2d 1113 (D. Minn. 2010), whereupon Gazal filed this appeal. Following Gazal's death, his widow, Maud Ledhagen Gazal, was appointed as the legal representative of his estate to prosecute the appeal. We affirm.

I.

Gazal lived in Australia, where he owned and operated Gazcorp, a successful industrial and retail development corporation, until his death in 2010. In 1999, he began to experience health problems and his doctors suspected that he had Parkinson's disease. Gazal owned property in Texas and decided to seek further treatment at the Baylor College of Medicine's Parkinson's Disease Center and Movement Disorders Clinic (Baylor) in Houston. In 2002, doctors at Baylor diagnosed Gazal with Parkinson's disease and prescribed Mirapex as part of his treatment. The drug reduced Gazal's symptoms but induced numerous side effects, including anxiety attacks, depression, insomnia, aggression, and claustrophobia. Shortly after beginning his treatment, Gazal began to gamble much more than he had previously, and his losses increased ten-fold. He first mentioned his increased gambling in February 2005 and first reported it to his doctor in April 2005.

In July 2005, the Mayo Clinic published a study suggesting a link between Mirapex and compulsive gambling (the Dodd/Mayo study). And, in November 2005 while Gazal was in Australia, one of his doctors suspected that Mirapex might be responsible for his gambling problems. Gazal was hospitalized for two weeks and ceased taking the drug, but renewed use again once he was released. Gazal admitted that at some point in late 2005, he became aware that Mirapex was linked to, and might cause, compulsive gambling.

Gazal wrote to two casinos in Australia in May 2006, requesting that they refuse his business. He asked the same of several acquaintances with whom he had

played cards. He continued to gamble, however, and in September 2007, he returned to Baylor and reported that he had lost millions of dollars and was experiencing family problems. His doctors at Baylor renewed his Mirapex prescription, and he continued to gamble.

The first large-scale systematic study of Mirapex and impulse-control disorders, called the Dominion Study, was published in June 2008. It concluded that patients taking Mirapex had a risk of developing a gambling disorder and that the risk was too great to be explained by chance or other causes. A few months after the Dominion Study was published, Gazal checked into a hospital to try again to wean himself off Mirapex, but he resumed taking it once he left the hospital. In May 2009, he succeeded in ceasing his use of the drug. A month later, Gazal filed suit against the pharmaceutical companies in Texas state court.

Gazal alleged a breach of warranty claim, together with a number of tort claims, all of which faulted the pharmaceutical companies for failing to warn him that taking Mirapex could lead to compulsive gambling. Altogether he sought more than $20 million in damages. The pharmaceutical companies removed the case to federal court. In March 2010, the Judicial Panel on Multidistrict Litigation transferred it to Minnesota as part of the Mirapex Products Liability Multidistrict Litigation.

The pharmaceutical companies moved for summary judgment, contending that Gazal's claims had accrued more than two years before he filed suit and were therefore time-barred. Gazal rejoined that his claims had not accrued until the Dominion Study was published in 2008 and that, in the alternative, the two-year statute of limitations should be tolled under the continuing tort doctrine, the "open courts" provision of the Texas Constitution, the ripeness doctrine, or mental disability.

The district court found that Gazal became aware of his gambling problem no later than 2003 and of the possible link between Mirapex and pathological gambling no later than 2005. It rejected Gazal's accrual theory and the various tolling arguments he set forth, concluded that his claims were time-barred, and granted summary judgment to the pharmaceutical companies on the tort claims. It also dismissed the breach of warranty claim after concluding that Gazal had not given the pharmaceutical companies the required notice before filing the claim.

## II.

We review *de novo* the district court's grant of summary judgment. South Dakota v. U.S. Dep't of Interior, 423 F.3d 790, 794 (8th Cir. 2005). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986).

### A. Statute of Limitations

Because this suit was removed to federal court under diversity jurisdiction, we apply the substantive law of Texas, including its statutes of limitation. See Walker v. Armco Steel Corp., 446 U.S. 740 (1980). The parties agree that in Texas, a products liability suit must be commenced within two years after the cause of action accrues, see Tex. Civ. Prac. & Rem. Code Ann. § 16.003, but dispute when this particular cause of action accrued.

Appellant maintains that Gazal suffered no legal injury and that no cause of action accrued until a causal link between Mirapex and compulsive behavior was substantiated in the Dominion Study in June 2008. The pharmaceutical companies

counter that the claim accrued in 2005 when the allegedly wrongful acts occurred and the alleged injuries resulted.

Appellant contends that the district court misconceived the nature of Gazal's argument when it took him to be invoking a version of the discovery rule, which applies when the underlying injury is latent or "inherently undiscoverable." Childs v. Haussecker, 974 S.W.2d 31, 36 (Tex. 1998). The discovery rule defers accrual until the plaintiff discovers the injury and is aware that it was likely caused by the wrongful acts of another. Id. at 40. Appellant maintains that Gazal's theory is one of legal injury, not discovery, under which a plaintiff must have suffered a legally cognizable injury for a cause of action to have accrued.

Childs addressed statutes of limitation in latent occupational disease cases. Id. at 43. It mentioned objective verification of causation as a factor in determining the date of accrual, but in no way endorsed the proposition that such verification must occur in a specific form such as epidemiological studies. Moreover, the court specifically observed that "the accrual of a cause of action is not dependent on a confirmed medical diagnosis" or other such verification. Id. at 42. Rather, for a claim to accrue, a "plaintiff's symptoms must manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury," such that a reasonable person in plaintiff's position have known that the injury was caused by another's wrongful acts. Id. at 40. Like the district court, we do not read Childs as requiring specific epidemiological evidence before a claim of this type accrues.

Appellant asserts that an injury is not legally cognizable until and unless its cause can be ascertained. In other words, "a cause of action does not accrue absent evidence of causal connection." Appellant's Br. 20. In a case of this nature, appellant argues, the Texas Supreme Court requires that, to be scientifically reliable, causation evidence must be based on a properly designed epidemiological study and

indicate that the relative risk of disease or injury for those exposed to the drug is more than double that of a control population. Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706 (Tex. 1997). Thus, the argument runs, Gazal's claim would have failed as a matter of law until the 2008 publication of the Dominion Study, which met the proof of causation standard allegedly required by Havner.

This argument fails, however, for we agree with the district court that objective verification of causation, in the form of an epidemiological study that meets the Havner standard, is not a predicate that must be established for a claim to accrue. Havner considered what weight ought to be given to particular epidemiological studies in determining whether the plaintiffs' causation evidence was legally sufficient under the "more likely than not" burden of proof. Id. at 714-24. It did not speak to the minimum notice a plaintiff must have before a particular claim accrues and does not bear on the particular issue before us.

Based on the undisputed facts before us, we conclude that Gazal was on notice of his injury and of its causal connection to his Mirapex prescription no later than 2005. He had access to information about the cause of his increased gambling, including his own observations and insight gleaned from talking with his doctors. His actions also reflect an awareness of the underlying cause behind his compulsive behaviors. In 2005, he reported his compulsive gambling to a doctor and linked it to Mirapex. Later that year, he was hospitalized while attempting to cease his use of Mirapex. In letters he wrote to casinos in May 2006, he requested that they not accept his business and explained that his lack of control arose as a negative side effect of his medication. In light of this evidence, we agree with the district court that the claim accrued more than two years before Gazal brought suit and thus was time-barred.

B.  Tolling

Appellant contends that the district court erred by not tolling the statute of limitations based on the continuing tort doctrine, the "open courts" provision in the Texas Constitution, the ripeness doctrine, or Gazal's alleged mental disability.

1.  The Continuing Tort Doctrine

"A cause of action for a continuing tort does not accrue until the defendant's act ceases."  Upjohn Co. v. Freeman, 885 S.W.2d 538, 542 (Tex. App. 1994).  Yet, as the district court made clear in its discussion of this case, the doctrine applies only so long as the plaintiff is unaware of the effect the drug is having on him.  Id. at 542; see also Allgood v. R.J. Reynolds Tobacco Co., 80 F.3d 168, 170 (5th Cir. 1996) ("Texas has limited its application to cases where the causal relation between action and injury remained unknown to the plaintiff.") (citing Upjohn Co.).  Because Gazal became aware of the effect of Mirapex more than two years before he filed suit, the continuing tort doctrine does not save his claim.

2.  The "Open Courts" Provision

Appellant maintains that denying Gazal the opportunity to pursue his claim violated a provision of the Texas Constitution stating that "[a]ll courts shall be open" and that every person "shall have a remedy by due course of law."  Tex. Const. art. 1, § 13.  According to appellant, the provision is intended to invalidate statutes of limitation that cut off a person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit.  See Nelson v. Krusen, 678 S.W.2d 918, 923 (Tex. 1984).

We conclude that the open courts provision does not operate to save Gazal's claim, for the doctrine is designed to protect a plaintiff who has yet to discover or

become aware of his putative injury.  See Martz v. Weyerhauser Co., 965 S.W.2d 584, 589 (Tex. App. 1998) ("The 'open courts' provision operates to toll the statute of limitations in situations in which it is impossible to discover the injury and timely file suit during the limitations period.").  Gazal knew that he had been injured, and whatever difficulty he faced in proving his theory cannot negate this fact.

### 3.  The Ripeness Doctrine

Appellant argues that the district court erred in concluding that the manifestation of a severe gambling problem in 2006 rendered Gazal's claims ripe at that time.  From the evidence that we have recounted above, we conclude that the district court did not err in determining that the facts were sufficiently developed to establish a concrete injury in 2006.

### 4.  Mental Stability

Appellant contends that the district court erred in finding no genuine issue of fact exists regarding whether Gazal was of "unsound mind" under § 16.0001 of the Texas Civil Practice and Remedies Code.  Persons of unsound mind are those "who are mentally incompetent to care for themselves or manage their property and financial affairs."  Hargraves v. Armco Foods, Inc., 894 S.W.2d 546, 547 (Tex. App. 1995).  The tolling provision on which appellant relies is intended to provide such persons with "access to the courts" and to account for their "inability to participate in, control, or even understand the progression and disposition of their lawsuit."  Ruiz v. Conoco, Inc., 868 S.W.2d 752, 755 (Tex. 1993).

To extend the statute of limitations on this basis, a plaintiff must produce either 1) specific evidence that would enable the court to find that he did not have the mental capacity to pursue litigation; or 2) a fact-based expert opinion to that effect.  See Chavez v. Davila, 143 S.W.3d 151, 156 (Tex. App. 2004).  The district court

found that the proffered evidence on this issue—affidavits from Gazal, his wife, his son, and his treating physician—was insufficient to allow a reasonable jury to conclude that Gazal lacked the requisite mental capacity during the limitations period. We agree.

The affidavits in question portray an individual whose illness and erratic behavior caused him pain and created emotional turmoil among his friends and family. In the words of his treating physician, Gazal was "completely unable to manage his compulsive behavior," "verbally abusive and unreasonable toward his wife and children," and overcome by "anxiety, depression, gambling addiction, abnormal addiction and other generalized behavioral problems." His son described similar behavioral problems and stated that his father "didn't even seem like the same person." His wife stated that it "seemed as if [he] had lost his mind."

On the other hand, Gazal managed to run and manage a very profitable company, to seek treatment first for his disease and then for the side effects he perceived were caused by Mirapex, and to reach out to casinos and friends to try to prevent further gambling losses. At no point did any of his doctors question his competence to care for himself and manage his affairs, nor did anyone take steps to have him declared legally incompetent. Without in any manner attempting to minimize the difficulties that Gazal faced in the last years of his life or the pain that his family experienced as a result, we conclude that the affidavits did not raise a genuine issue of fact as to whether Gazal's behavioral problems and side effects were so severe as to render him legally incompetent. Consequently, the tolling provisions of § 16.0001 are unavailable.

## C. Warranty Claim

Finally, appellant claims that the district court erred in concluding that Gazal had not satisfied the requirement that purchasers give notice of a breach of warranty

claim prior to filing suit. Tex. Bus. and Com. Code Ann. § 2.607(c)(1). At issue is whether Gazal, as a subpurchaser, was required to give notice to the manufacturer as a precondition of bringing suit.

The district court acknowledged that a split of authority exists on this issue within the Texas intermediate appellate courts. It concluded that the Texas Supreme Court, if confronted with the question, would adopt the majority position and require that a subpurchaser give the seller prior notice of his breach of warranty claim. We agree with the district court's prediction and thus conclude that it did not err in granting summary judgment to the defendants on that claim.

III.

The judgment is affirmed.

_____