Lucas **HERNANDEZ**, Plaintiff,

v.

**BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC**, Defendant.

Civil No. 4–13–cv–00374.

United States District Court, S.D. Iowa, Central Division.

Signed Dec. 12, 2014.

Brooke C. Timmer, Paige Ellen Fiedler, Whitney C. Judkins, Fiedler Law Firm PLC, Urbandale, IA, for Plaintiff.

Matthew Sean Brick, Erin M. Clanton, Brick Gentry Bowers Swartz & Levis PC, West Des Moines, IA, Robert W. Vyverberg, Holland & Knight LLP, Chicago, IL, for Defendant.

## ORDER

RONALD E. LONGSTAFF, Senior District Judge.

The Court has before it cross motions for summary judgment, filed September 15, 2014. Both parties filed resistance materials on October 9, and replies on October 20, 2014. The motions are considered fully submitted.[1]

## I. BACKGROUND[2]

A. Plaintiff's Initial Employment and Scheduling

Defendant Bridgestone Americas Tire Operations, LLC ("BATO") is a Delaware-

---

1. Plaintiff has requested oral argument on his motion. After reviewing the pleadings and applicable law, however, the Court finds argument unnecessary to the disposition of the motion. Plaintiff's motion for argument is denied.

2. The critical facts are not in dispute with regard to plaintiff's claim for interference with his rights under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"). The Court has viewed the facts relevant to plaintiff's claims of FMLA retaliation/discrimination and harassment in a light most favorable to plaintiff.

based limited liability company that designs, manufactures and sells tires. Plaintiff Lucas Hernandez began working for BATO in early November 2003 as an hourly production worker in its Des Moines, Iowa production facility ("the plant"). In 2004, plaintiff transferred to a tire builder position at the plant, and remained in this position until his termination in August 2012.

All tire builders at the plant work 12-hour shifts, with shifts one and three working daytime hours, and shifts two and four working nights. Plaintiff worked shift two during late 2011 and 2012. Throughout his employment with BATO, plaintiff was a bargaining unit employee and a member of the United Steelworkers of America, AFL–CIO, CLC (the "Union"). The terms and conditions of plaintiff's employment therefore were governed by the collective bargaining agreement ("CBA") between BATO and the Union.

BATO develops a schedule for all employees' standard workweeks on an annual basis. Once this master schedule is released in October of each year, it does not change. The parties do not dispute that, under this master schedule, plaintiff's "usual or normal workweek" was 42 hours long.[3]

In addition to the standard workweek, employees are given the option to sign-up for overtime hours on their off-shifts by writing their names on a sign-up sheet. BATO posts the sheets in the plant's tire room one week in advance, based on the plant's scheduling and production needs. Pursuant to a process outlined in the CBA, BATO then selects individuals to work overtime based on the employee's seniority and total overtime hours worked to-date. Once an individual is selected to work an overtime shift, BATO expects the employ-

ee to work the shift, unless he is allowed to leave early due to diminished production.

### B. BATO's Attendance and FMLA Leave Policy

BATO maintains an attendance program for its hourly production employees, which was negotiated with the Union and is incorporated into the CBA. Under this attendance program, an "incident of absence" is defined as "one scheduled shift of absence." Defendant's Statement of Undisputed Facts ¶ 9.

Under the plant's attendance program, the Company imposes progressive discipline for accumulated incidents of absence: five incidents in a nine-month period result in counseling; an additional incident within nine months of the last incident after counseling results in a "step 2" written reprimand; an additional incident within nine months after the written reprimand results in a "step 3" final written warning; and an additional incident within nine months after the final written warning leads to "step 4" termination.

BATO's computerized "TIPS" attendance system prompts supervisors to schedule meetings with employees who reach steps 1–3 under the attendance program. The plants' human resources department administers any disciplinary action—including termination—from that point forward.

Certain absences are excused under the attendance program and do not result in an "incident," such as those caused by an employee's accident or sickness ("A & S"), and those that qualify for protection under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"). The plant's human resources department

---

**3.** Plaintiff actually worked three 12–hour shifts one week, or 36 hours, and four 12–hour shifts the next week, or 48 hours. Under BATO's "split Saturday" approach, employees are paid for 42 hours of work per week.

decides whether to excuse an absence, and is in charge of monitoring employees' FMLA usage. Under BATO's A & S plan, which is contained within the negotiated Pension & Insurance ("P & I") Agreement with the Union, FMLA leave runs concurrently with approved A & S leave.

### C. Facts Leading to Plaintiff's Termination

Between October 31, 2011 and July 15, 2012, plaintiff was absent from his usual and normal work schedule 48 times, and absent from overtime shifts on six occasions.

Many of plaintiff's absences during this period were for FMLA-qualifying reasons. In late 2011 and 2012, plaintiff's son required frequent treatments for his asthma, which caused plaintiff to need additional time off from work to provide the necessary transportation and care. In late November 2011, plaintiff submitted an FMLA certification form requesting intermittent FMLA leave to care for his son. Based on his this certification, BATO approved plaintiff for 504 hours of FMLA leave beginning November 14, 2011 and ending November 14, 2012. BATO reached this figure by multiplying plaintiff's normal, 42-hour workweek by 12. Bato did not account for plaintiff's overtime shifts in this FMLA allotment.

Each time plaintiff missed work due to an accident or sickness, or for an FMLA-qualifying purpose, BATO deducted 12 hours from the 504-hour allotment, whether plaintiff missed one of his standard shifts, or an overtime shift for which he had been selected.

Meanwhile, throughout 2011 and 2012, plaintiff was disciplined for unexcused absences pursuant to the plant's attendance program. These absences resulted in a counseling session, which occurred on February 1, 2012.

Plaintiff had received another unexcused absence on January 13, 2012, placing him on step 1 under the attendance program. BATO issued a written warning on February 1, 2012. It is undisputed that plaintiff would have been removed from BATO's attendance program if he did not have any additional incidents of absence through October 13, 2012, however.

Plaintiff was absent from scheduled overtime shifts for FMLA-qualifying reasons on May 7, and 13, and June 4, and 8, 2012. BATO deducted 12 hours from plaintiff's annual leave allotment balance for each of these four shifts.

Plaintiff was absent again for an FMLA-qualifying reason between July 9–15, 2012. Plaintiff did not miss another scheduled shift between July 16, and August 6, 2012.

At some point during or prior to his July 9–15, 2012 absence, plaintiff called Samantha Peterson, BATO's human resources coordinator, to alert her of the reason for his absence. Peterson then accessed his TIPS file and determined that, pursuant to BATO's policy for deducting FMLA hours due to missed overtime shifts, plaintiff had exhausted his 504–hour leave entitlement on July 10, 2012.[4] Peterson sent plaintiff a letter dated July 17, 2012, confirming that, under current BATO policy, plaintiff's FMLA leave was exhausted as of July 10, 2012.[5]

---

**4.** At this juncture, the Court has not made a determination as to the *correctness* of BATO's leave calculations. There is no dispute, however, that BATO used its own policy to reach certain conclusions regarding plaintiff's leave usage.

**5.** Several months earlier, plaintiff had asked Peterson about the status of his FMLA hours. She then accessed that information from the TIPS system and informed him orally of his leave balance. She did not confirm the amount of remaining leave in writing, however.

Based on its policy for calculating and accounting for FMLA leave, BATO concluded that plaintiff's absences on July 11, and 12, 2012 caused him to advance to steps 2 and 3 under the attendance program. BATO issued plaintiff a written reprimand and a final written warning on July 24, and August 2, 2012, respectively.

The shifts plaintiff missed on July 11, and 12, 2012 were overtime shifts for which plaintiff had signed-up and been selected. Plaintiff contends that since his absences on these dates were for FMLA-qualifying purposes, no deductions should have been made from his 504–hour annual allotment.[6]

Plaintiff remained off-work on July 13, 14, and 15, 2012. Believing plaintiff had exhausted his leave as of July 10, 2012, BATO considered these absences to be unexcused, and advanced plaintiff to Step 4 under the attendance program.

On August 2, 2012, a meeting was held between plaintiff, his Union steward and the plants's labor relations manager, Jeff Higgens. During this meeting, plaintiff provided BATO personnel with a note from his physician indicating he was absent from July 9, through July 15, 2012 for an FMLA-qualifying purpose.

Pursuant to the CBA, plaintiff was placed on an Article 12 cooling off period during the August 2, 2012 meeting, and was instructed to return to the plant on August 6, 2012. During the cooling off period, Jim Funcheon, BATO's division human resources manager, and Higgens reviewed plaintiff's absences, and confirmed that, pursuant to BATO's policy for calculating and allocating FMLA leave, plaintiff

had exhausted his FMLA leave allotment as of July 10, 2012. Based on this conclusion, on August 6, 2012, Funcheon made the decision to terminate plaintiff's employment.

### D. Facts Regarding Alleged Retaliation

Plaintiff believes his repeated use of FMLA leave caused him to be selected for fewer overtime shifts. When he asked his supervisors about the discrepancy, no explanation was given. Plaintiff admits that he does not fully understand the process for assigning overtime, but is aware of employees with less seniority than him who were selected when he was not.

On at least three occasions, plaintiff was moved to a less-productive machine after he took FMLA leave. He reported his accusation to Peterson on at least one occasion, and she responded: "Darn those guys. I told them they can't do that." Deposition of Lucas Hernandez ("Hernandez Dep.") at 151, Plaintiff's Supp.App. at 134.

Plaintiff also complained to Area Business Manager Andy Minor, who responded: "Oh, are you going to start this shit again?" Hernandez Dep. at 172, Defendant's App. at 39. Plaintiff lost up to $200.00 per day in earnings on the less-productive machines.

Plaintiff also believes he was denied certain "out-of-class work" as a result of taking FMLA leave.[7] When plaintiff later complained that BATO was forcing plaintiff to sit idle and not giving him "out-of class work," one of his supervisors, Robert

---

**6.** Similarly, plaintiff also disputes deductions for the missed overtime shifts on May 7, and 13, 2012, as well as June 4, and 8, 2012.

**7.** Higgins testified that "out-of-class work" is a term used when an employee is assigned "a different job that is not [his] normal classifica-

tion." Deposition of Jeffrey Higgins ("Higgins Dep."), at 95, Plaintiff's Supp.App. at 126. Out-of-class work most commonly is assigned if an employee's normal machine is not operational, either due to a mechanical problem or lack of material. *Id.*

Bruanswig, replied: "Get your ass to work. You're getting paid what you're worth." Hernandez Dep. at 163, Defendant's App. at 38. Plaintiff complained to his supervisors more than his co-workers complained about not being given as much out-of-class work or overtime.

In addition, Tim Linn, plaintiff's union steward, stated: "Fuck FMLA." "You guys on FMLA get to come and go when you want." Plaintiff's Amended Answers to Defendant's First Set of Interrogatories at 2–3, Plaintiff's Supp.App. at 149–50. Linn further stated: "You're fucking your partner out of money every time you're gone. He is having to work with a different partner each day." *Id.* at 3, Plaintiff's Supp.App. at 150. At some point, plaintiff's supervisor, Roger Mills, told plaintiff to "[g]et your ass to work." Hernandez Dep. at 177, Plaintiff's Supp.App. at 140. Lastly, Higgins, the labor relations section manager, threatened to "get" plaintiff for being a "loss of value" to the company when plaintiff was in Higgins' office "being disciplined for attendance and having absences for FMLA leave." Plaintiff's Amended Answers to Defendant's First Set of Interrogatories at 3, Plaintiff's Supp.App. at 150.

### E. Present Action

Plaintiff filed the present action in the Iowa District Court for Polk County on May 8, 2013. Defendants removed the action to this Court on August 28, 2013. Plaintiff's one-count complaint alleges that defendant violated the FMLA in failing to provide plaintiff with the appropriate FMLA leave, in interfering with plaintiff's right to take FMLA leave, in discriminating against plaintiff and terminating his employment for exercising his rights under the FMLA, and in retaliating against and/or discriminating against plaintiff for exercising his FMLA rights.

Plaintiff now moves for partial summary judgment in his favor, limiting trial solely to the issue of damages and available equitable remedies. Defendant in turn moves for summary judgment in its favor on all of plaintiffs' claims.

## II. APPLICABLE LAW AND DISCUSSION

### A. Summary Judgment Standard

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Gazal v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 647 F.3d 833, 837 (8th Cir.2011). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Greer v. Shoop,* 141 F.3d 824, 826 (8th Cir.1998). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Whether BATO Interfered with Plaintiff's FMLA Rights by Counting Voluntary Overtime Hours that Plaintiff Did not Work Against his FMLA Entitlement

The FMLA entitles qualified employees to take up to 12 weeks of leave during any

12–month period due to "medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). The Act expressly prohibits a covered employer from interfering with or denying an employee rights under the Act, or from discharging or discriminating against an employee who exercises his FMLA rights. *Id.* at § 2615(a).

■ Three types of claims are available under the FMLA: (1) "interference," where "an employee claims the denial of a benefit to which he is entitled under the statute;" (2) "retaliation," where an employer allegedly takes adverse action against an employee for "opposing any practice made unlawful under the FMLA;" and (3) "discrimination", where, "after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005–06 (8th Cir.2012). The present case involves all three types of claims.

■ To succeed on a claim for FMLA interference, plaintiff must prove the following elements: 1) he was an "eligible employee;" 2) BATO was an employer as defined in the FMLA; 3) plaintiff was entitled to FMLA leave; 4) plaintiff gave BATO appropriate notice of his intent to take leave; and 5) BATO denied plaintiff benefits to which he was entitled under the FMLA. *See, e.g., Beatty v. Custom–Pak, Inc.*, 624 F.Supp.2d 1045, 1052 (S.D.Iowa 2009) (internal citation and reference to statute omitted). Only the fifth element is at issue in the present case.

Plaintiff contends BATO denied FMLA benefits to which he was entitled as a matter of law by deducting from plaintiff's allotment of FMLA leave 12 hours for scheduled overtime shifts plaintiff missed due to an FMLA-qualifying purpose. Alternatively, plaintiff argues that if the Court finds that BATO lawfully deducted the overtime hours from plaintiff's FMLA balance, BATO nevertheless should have accounted for those overtime hours in plaintiff's annual allotment.[8] Defendant disputes both arguments, and contends it appropriately terminated plaintiff after he used more FMLA leave in the particular 12–month period than he was entitled to use under federal law.

The regulations outlining the administration of intermittent FMLA leave are found at 29 C.F.R. § 825.205. Subsection (c) addresses the issue of missed overtime with regard to FMLA leave:

> (c) Overtime. If an employee would normally be required to work overtime, but is unable to do so because of a FMLA-qualifying reason that limits the employee's ability to work overtime, the hours which the employee would have been required to work may be counted against the employee's FMLA entitlement. In such a case, the employee is using intermittent or reduced schedule leave. For example, if an employee would normally be required to work for 48 hours in a particular week, but due to a serious health condition the employee is unable to work more than 40 hours that week, the employee would utilize eight hours of FMLA-protected leave out of the 48–hour workweek, or one-

---

**8.** Significantly, plaintiff himself implicitly recognizes that his first argument is the stronger argument by conceding in both his initial and resistance briefs that: "Because overtime hours worked beyond the normal 42 hour workweek were voluntary, BATO properly did not include any of those hours in its calcula-

tion of [plaintiff's] FMLA entitlement." Plaintiff's Brief in Support of Motion for Partial Summary Judgment, at 6; Plaintiff's Brief in Resistance to Defendant's Motion for Summary Judgment, at 11. In view of the Court's finding, below, there is no need specifically to address plaintiff's alternative argument.

sixth of a week of FMLA leave. *Voluntary overtime hours that an employee does not work due to an FMLA-qualifying reason may not be counted against the employee's FMLA leave entitlement.*

*Id.* § 825.205(c) (emphasis added).[9]

Plaintiff contends that because the overtime at issue was outside of his normal, 42-hour workweek, coupled with the fact he initially *chose* to put his name on the sign-up sheet to work extra shifts, the overtime is "voluntary," rather than "required," under the meaning of subsection 805.205(c). The Court has been unable to locate a reported decision addressing the precise issue at bar.[10] It notes, however, that plaintiff's argument is supported by a July 19, 1999 Opinion Letter issued by the Department of Labor interpreting the ap-

9. Prior to March 2013, the sentence emphasized by the Court stated: "Voluntary overtime hours that an employee does not work due to a serious health condition may not be counted against the employee's leave entitlement." 78 Fed.Reg. 8834, 8870 (March 8, 2013). The DOL implemented a Final Rule on March 8, 2013 to amend the language from "serious health condition" to "FMLA-qualifying purpose" to be "consistent with the language used in the first sentence of the paragraph to more accurately reflect that overtime hours missed by an employee may be due to any FMLA-qualifying reason." *Id.* In any event, BATO has not argued that plaintiff's absences to care for his son should be treated differently than if he himself had a serious health condition.

10. Two unreported district court decisions are instructive on the issue, however. *Andrews v. CSX Transp., Inc.*, No. 3:06–cv–704–J–32HTS, 2009 WL 5176462 (M.D.Fla. Dec. 22, 2009) is a consolidated action brought on behalf of numerous employees against related corporations, alleging violations of the FMLA. Among other issues, the court was asked to consider the argument plaintiff raised *alternatively* in the present case—whether overtime hours should have been reflected in the employee's annual allotment of FMLA leave. In evaluating the issue, the court was necessarily required to determine whether the overtime hours at issue were "voluntary," and not part of the employee's usual and normal work schedule. *Id.* at \*22–23. As in the present case, the employee in *Andrews* had a set weekly schedule, with occasional overtime shifts. *Id.* at \*23. The court concluded that his "erratic" logging of overtime hours did not render his schedule truly "variable," such that the overtime hours should have been reflected in his FMLA allotment. *Id.*

Dicta from *Andrews* is highly persuasive in the present case. Specifically, in evaluating the claims of another plaintiff/employee, the *Andrews* court "assum[ed] without deciding" that the employer's practice of deducting missed overtime hours from the employee's annual allotment would have been considered unlawful if the employee had been prejudiced by the deductions, *i.e.* had otherwise exhausted her annual allotment. *Andrews*, 2009 WL 5176462 at \*6. It is not clear from the decision how the overtime hours were scheduled. Admittedly, the *Andrews* court refers to the overtime at issue as "assigned," or "forced," rather than "voluntary" hours. *Id.* at \*3–6. Nevertheless, if the court did not believe the hours were "voluntary" under the meaning of 29 U.S.C. § 825.205(c), it would have had no basis for "assuming without deciding" that the practice of deducting hours from the employee's FMLA allotment was actionable. *Id.* at \*6.

In *Mays v. American Elec. Power*, No. 2:08–cv–1124, 2010 WL 3667006 (S.D.Ohio Sept. 15, 2010) a power company employee alleged the company violated the state's antidiscrimination statute and the FMLA when the company transferred him to a lower-paying position upon learning the employee's medical condition prevented him from working overtime. Notably, both the employee handbook and the applicable CBA described overtime as an "obligation" when reasonably required by the company. *Id.* at \*1. Employees in the plaintiff's position were "required" to respond to and perform a certain percentage of "callouts" for overtime work. *Id.* Accordingly, in evaluating a portion of the plaintiff's FMLA interference claim, the court found the company "correctly charged missed overtime hours to [employee's] FMLA leave." under § 825.205(c). *Id.* at \*10. In contrast, there is no evidence in either *Andrews* or the present case that employees ever were "required" to perform a certain amount of overtime as a condition of their employment.

plicable regulations. This letter states in relevant part:

> Under the FMLA, the term "workweek" is the employee's usual or normal schedule (hours/days per week) prior to the start of FMLA leave, and is the controlling factor for determining how much leave an employee is entitled to use when taking FMLA leave intermittently.... If overtime hours are on an "as needed basis" and are not part of the employee's *usual or normal workweek*, or is voluntary, such hours would neither be counted to calculate the amount of the employee's FMLA leave entitlement nor charged to the employee's FMLA leave entitlement. Where overtime hours are not part of the employee's *usual or normal workweek*, disciplinary action may not be taken against an employee for being unable to work overtime as a result of limitations contained in the medical certification obtained for FMLA purposes.

DOL Opinion Letter FMLA–107 (July 19, 1999) (emphasis in orig.). This Opinion letter clearly indicates the DOL's intent that overtime hours outside of an employee's "usual or normal workweek" should "neither be counted to calculate the amount of the employee's FMLA leave entitlement *nor* charged to the employee's FMLA leave entitlement." *Id.*

In its resistance brief, BATO argues that the July 1999 Opinion Letter is outdated, since the DOL amended § 825.205 in November 2008 to address specifically the issue of overtime. BATO also includes an excerpt of the DOL's Final Rule explaining this amendment, and allowing the deduction for missed overtime. Defendant's Brief in Resistance to Plaintiff's Motion for Partial Summary Judgment at 5–6. Significantly, however, BATO omitted from its excerpt another portion of the Rule explaining *why* the DOL believed the deduction was "fair." The Family and Medical Leave Act of 1993, 73 Fed.Reg.

67934, 67978–9 (Nov. 17, 2008) ("November 17, 2008 Final Rule"). The relevant portion of the Ruling states as follows:

> Consistent with the discussion in the preamble to the proposal, the final rule states that where an employee would normally be required to work overtime, but cannot do so because of a FMLA-qualifying condition, the employee may be charged FMLA leave for the hours not worked. This new regulatory section is not a change in policy but is simply intended to clarify in the regulations the Department's existing policy.... The Department agrees that the appropriate focus is whether the employee would have been required to work the overtime hours but for the taking of FMLA leave, and has added an example to the proposed rule to illustrate this principle.... Many Postal Service employees also opposed being charged any FMLA leave for overtime hours not worked. For example, the American Postal Workers Union Clerk Division, Chicago Region expressed a concern that being charged for overtime hours could diminish an employee's entitlement below 12 workweeks, and could be arbitrary and unfair if the amount of leave charged was to vary according to seasonal overtime requirements. *The Department points out that overtime is factored into the FMLA entitlement because both the entitlement and the leave usage rate are based on the employee's required (i.e. scheduled) hours of work.* The Department believes it is fair, therefore, that overtime not worked be counted against the FMLA entitlement when the employee would have been required to work the overtime hours but for the use of FMLA leave.

*Id.* (emphasis added).

As argued by plaintiff, the DOL clarified in its 2008 Final Rule that the 2008 amend-

ment was not a policy change, but simply a clarification of existing policy.[11] November 17, 2008 Final Rule. Furthermore, as illustrated by the example, the DOL found it "fair" to deduct overtime not worked when the overtime was considered part of an employee's "scheduled" hours of work, and *therefore*, factored into the annual FMLA allotment. This language is entirely consistent with the language from the 1999 Opinion Letter, which stated: "If overtime hours are on an "as needed basis" and are not part of the employee's *usual or normal workweek*, or is voluntary, such hours would neither be counted to calculate the amount of the employee's FMLA leave entitlement nor charged to the employee's FMLA leave entitlement." DOL Opinion Letter FMLA–107 (July 19, 1999).

■ Absent plain error or inconsistency, a reviewing court generally must defer to an agency's interpretation of its own regulations, regardless of the form that interpretation may take. *See Talk Am., Inc. v. Mich. Bell Tel. Co.*, — U.S. —, 131 S.Ct. 2254, 2261, 180 L.Ed.2d 96 (2011) ("[W]e defer to an agency's interpretation of its own regulations, even in a legal brief, unless the interpretation is 'plainly erroneous or inconsistent with the regulation[s]' or there is any other 'reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'") (quoting *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 131 S.Ct. 871, 880–81, 178 L.Ed.2d 716 (2011)). Absent any inconsistency or perceived error with regard to the DOL's Opinion Letter or Final Rule, the Court

gives great deference to the agency's interpretations.

■ Here, the undisputed facts show that employees "are allowed to request" overtime by signing overtime sheets posted in the plant's tire room one week prior to the overtime. Defendant's Statement of Undisputed Fact at ¶ 56. BATO then selects employees for overtime "based on seniority and the number of overtime hours they have previously worked during the year." *Id.* at ¶ 57. Likewise, both parties agree that the overtime hours are not part of plaintiff's "usual and normal workweek" of 42 hours. *See id.* at ¶ 29 (stating that plaintiff's "fixed work schedule as a tire builder, which was established on an annual basis, resulted in a 42–hour work week based on the plant's weekly, split-shift payroll schedule). Because defendant could not have contemplated plaintiff's overtime hours with any degree of certainty, it correctly declined to account for those hours in plaintiff's annual FMLA allotment. *Id.* at ¶ 30.

After treating plaintiff's occasional overtime shifts as "voluntary" for purposes of calculating the allotment, however, BATO cannot then choose to treat them as other than "voluntary" under § 825.205(c). The fact BATO "expects" employees to show up to a scheduled overtime shift does not alter the fact the employee initially "volunteered" for the shift. Pursuant to the plain language of the regulations, along with the 1999 Opinion Letter and the 2008 Final Rule, the Court finds as a matter of law that BATO should neither have charged missed overtime hours against plaintiff's annual FMLA allotment, nor dis-

---

**11.** Prior to 2008, the issue of overtime was not explicitly addressed in the regulations, but simply discussed in the preamble to the then-current Rule. *See* Fed.Reg. 2202 (Jan. 5, 1995). After commentators requested that the DOL's position be included in the regulatory text, it promulgated the 2008 amendment

adding § 825.205(c). Again, however, the DOL emphasized that the "new regulatory section is not a change in policy but is simply intended to clarify in the regulations the Department's existing policy." 73 Fed.Reg. 67934–01 (Nov. 17, 2008).

ciplined him as a result of taking FMLA-qualifying leave. *See* 29 C.F.R. § 825.205; DOL Opinion Letter FMLA–107 (July 19, 1999).

Having concluded that BATO inappropriately deducted from plaintiff's annual allotment for scheduled overtime shifts plaintiff missed due to an FMLA-qualifying purpose, the Court finds as a matter of law that BATO denied plaintiff benefits to which he was entitled under the FMLA–12 full workweeks of leave for FMLA-qualifying purposes. *See* 29 U.S.C. §§ 2601(b)(2); 2612(a)(1)(D).

Furthermore, there is no dispute that "but for" BATO's practice of deducting FMLA hours for overtime shifts missed, plaintiff would not have advanced under BATO's disciplinary process and would not ultimately have been terminated. *See* Plaintiff's Statement of Undisputed Facts, at ¶¶ 21–30; *see also* Hernandez FMLA Absence Chart, Plaintiff's App. at 101. Plaintiff missed overtime shifts for an FMLA-qualifying reason on May 7, and 13, 2012, June 4, and 8, 2012, and July 11–15, 2012. Hernandez FMLA Absence Chart, Plaintiff's App. at 101. BATO deducted 12 hours from plaintiff's annual FMLA allotment for each of those shifts. *Id.; see also* Deposition of Samantha Peterson ("Peterson Dep.") at 49–50, Plaintiff's App. at 46. If these deductions had not been made, plaintiff would not have exceeded his 504–hour allotment as of the date of his termination. *See* Hernandez FMLA Absence Chart; see also Deposition of Jim Funcheon ("Funcheon Dep.") at 184, Plaintiff's App. at 19 (agreeing that plaintiff was terminated strictly on the basis of attendance). Plaintiff's motion for partial summary judgment therefore is granted with regard to his interference claim. Trial on this claim will be limited to the amount of damages to which plaintiff is entitled, and whether he also is entitled to additional equitable relief, including reinstatement.

## C. Whether BATO Unlawfully Retaliated Against Plaintiff for Exercising his FMLA Rights

Plaintiff also contends that BATO unlawfully discriminated against him for taking FMLA leave and/or retaliated against him for complaining about adverse treatment he perceived to be related to his FMLA leave. Because the second and third elements of each claim are identical and the first element is not at issue, the Court will evaluate the claims contemporaneously as a claim for "FMLA retaliation," distinguishing only where necessary based on the facts. *See Pulczinski*, 691 F.3d at 1007 (setting out elements of FMLA discrimination claim); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011) (describing claim of FLMA *retaliation* as "discrimina[tion] ... for exercising her FMLA rights").

Absent direct evidence, as in the present case, a claim for FMLA retaliation follows the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Wierman*, 638 F.3d at 999. To establish a prima facie case of retaliation, plaintiff must show: 1) he exercised his rights under the FMLA; 2) that he suffered an adverse employment action; and 3) a causal connection between the two. *Id.* The burden then shifts to defendant to set forth a legitimate, non-retaliatory reason for the adverse action. *Id.* If defendant is able to meet this burden, plaintiff must then put forth sufficient evidence to create an issue of fact as to whether the asserted reason "is merely a pretext for unlawful retaliation." *Id.*

### 1. Whether Plaintiff can Establish his Prima Facie Case

There is no dispute that plaintiff can satisfy the first element of his prima facie case, that he exercised his rights

under the FMLA, and complained to BATO about treatment he perceived to be discriminatory/retaliatory. To establish the second element, plaintiff alleges that he was wrongfully terminated for exercising those rights, and that he also was moved to less productive machines, and denied certain overtime and out-of-class opportunities. The Court previously has held that plaintiff is entitled to damages on his interference claim attributed to his wrongful termination. It is well settled that a party may not recover duplicate damages for one wrong. *See, e.g., Rasmussen v. Quaker Chem. Corp.*, 993 F.Supp. 677, 684 (N.D.Iowa 1998) (setting aside award attributed to breach of contract as duplicative of back pay awarded on discrimination claim). Accordingly, the Court will focus solely on plaintiff's claim that he was moved to less-productive machines, and denied overtime and out-of-class work after taking FMLA leave.

■ BATO contends that these "lesser" actions are insufficient to amount to an "adverse employment action" necessary to support the second element of plaintiff's retaliation claim. In addressing this element, both the Supreme Court and the Eighth Circuit have held that: " 'The standard is an objective one, requiring the plaintiff to demonstrate 'a reasonable employee would have found the challenged action materially adverse,' and the employer's action 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " " *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 917 (8th Cir.2007) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). In essence, retaliatory actions "must be material, producing significant rather than trivial harm." *Id.* (quoting *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 785 (8th Cir.2007)).

Here, plaintiff has produced evidence that he was moved to a less-productive machine on at least three occasions after he took FMLA leave. *See* Hernandez Dep. at 153–156, Defendant's App. at 36. Plaintiff complained to Area Business Manager Andy Minor, who responded: "Oh, are you going to start this shit again?" *Id.* at 172, Defendant's App. at 39. Plaintiff also states he talked to Peterson about one such incident, and she responded: "Darn those guys. I told them they can't do that." *Id.* at 151, Plaintiff's Supp.App. at 134. Plaintiff sustained losses of $200.00 per day in earnings on one of the less-productive machines, where he worked for approximately three months before being moved. *Id.* at 150, Plaintiff's Supp.App. at 134.

Plaintiff further alleges in his deposition that he was denied certain overtime shifts and out-of-class work as a result of taking FMLA leave and/or speaking out about his FMLA rights. Hernandez Dep. at 63–68, Plaintiff's Supp.App. at 130–31 (overtime). *Id.* at 169–172, Defendant's App. at 39. Plaintiff asked his supervisor, Ron Braunswig, if he could work on another assignment, and was refused. *Id.* at 170, Defendant's App. at 39. Although plaintiff admitted he did not fully understand the process for selecting overtime, *see id.* at 67–68, Plaintiff's Supp.App. at 131–32, and knew that the assignment of out-of-class work was somewhat discretionary, *see id.* at 170, Defendant's App. at 170, plaintiff nevertheless was aware of employees with less seniority being given the overtime. *Id.* at 67–68, Plaintiff's Supp.App. at 131–32 (overtime). He believes he was denied out-of-class work because he complained about being mistreated due to his FMLA leave. *Id.* at 172, Defendant's App. at 39.

As argued by plaintiff, a reasonable jury could conclude that, to a production employee who receives incentive pay based on the number of tires produced, being trans-

ferred even temporarily to a less-productive machine "translates directly to a loss of money." Plaintiff's Brief in Resistance to Defendant's Motion for Summary Judgment at 18. Although the evidence regarding lost overtime and out-of-class work is far more speculative, being denied these opportunities likewise "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Gilbert*, 495 F.3d · at 917. The Court finds plaintiff has created a material issue of fact as to whether he suffered a "materially adverse" employment action short of his actual termination.

■ The third element of the prima facie case is whether a causal connection existed between plaintiff's alleged loss of overtime, out-of-class work and assignment to less-productive machines and the exercise of his FMLA rights. *Wierman*, 638 F.3d at 999. The Eighth Circuit has held that: "[T]he kind of causal connection required for a prima facie case [of FMLA retaliation] is not 'but for' causation, but rather, a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'" *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1003 (8th Cir.2005) (quoting *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir.2002)). Retaliatory motive can be shown by demonstrating: 1) that the employer knew of the protected conduct; and 2) temporal proximity between the protected conduct and the adverse action. *See, e.g., Hervey v. County of Koochiching*, 527 F.3d 711, 722 (8th Cir.2008). Viewing the facts in a light most favorable to plaintiff, the evidence shows that plaintiff was placed on a less-productive machine soon after having been off work on FMLA leave on at least three occasions. *See* Defendant's Statement of Undisputed Facts at ¶ 89; Hernandez Dep. at 153–156, Defendant's App. at 36. One of these moves took place within a week after plaintiff returned from FMLA

leave. Hernandez Dep. at 145–48, P. Supp.App. at 133.

Plaintiff's testimony is notably vague with regard to dates for such moves. Moreover, plaintiff was unable to pinpoint with any certainty a date on which he was denied out-of-class work or overtime as a result of FMLA leave. Because machine assignment was left to the discretion of management, and management undoubtedly was aware of plaintiff's recent absences, however, the Court will assume for purposes of this motion that plaintiff can establish a prima facie case of retaliation.

### 2. Whether Plaintiff Can Establish Pretext

At this juncture, the burden shifts to defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action. *Wierman*, 638 F.3d at 999. Defendant argues generally that BATO selected employees for overtime based strictly on the guidelines contained in the CBA. It further suggests that out-of-class work is selected and machine assignments are made based on changes in work orders and the availability of materials.

■ Plaintiff must now produce evidence showing defendant's proffered reasons for the adverse actions were pretextual. *Wierman*, 638 F.3d at 999. At this juncture, plaintiff's claim fails. As noted by the Eighth Circuit in *Wierman*, a "plaintiff's prima facie retaliation case, built on temporal proximity, is undermined where the allegedly retaliatory motive coincides temporally with the non-retaliatory motive." *Id.* at 1001 (internal citation omitted). Here, plaintiff has built his prima facie case entirely on the allegation that he was moved to inferior machines and/or denied opportunities to make more money shortly after returning from FMLA leave. When pressed, he was able to provide a definite time period for the allegedly adverse employment action only with re-

gard to one incident, however. Hernandez Dep. at 145–48, P. Supp.App. at 133. When balanced against defendant's evidence that it selects overtime according to strict guidelines set forth in the CBA, and machine usage based on changes in work orders and the availability of materials, coupled with plaintiff's admission that he was not entirely sure of the selection process, plaintiff's already weak prima facie case is severely undermined. *See Wierman,* 638 F.3d at 1001.

Absent additional, specific evidence showing BATO management knowingly went against established selection guidelines because of plaintiff's exercise of his FMLA rights, the Court finds summary judgment must be granted on plaintiff's claim for FMLA retaliation/discrimination. In short, plaintiff's "prima facie retaliation case is not so strong that it establishes pretext on its own." *Id.*

### D. Whether Defendant Maintained a Hostile Work Environment

■■■■ Lastly, plaintiff contends that supervisors and coworkers unlawfully harassed him for taking FMLA leave. *See* Petition and Jury Demand at ¶ 19; *see also* Hernandez Dep. at 186, P. Supp.App. at 141. In particular, plaintiff alleges that Higgins, the labor relations section manager, threatened to "get" plaintiff for being a "loss of value" to the company when plaintiff was in Higgins' office "being disciplined for attendance and having absences for FMLA leave." Plaintiff's Amended Answers to Defendant's First Set of Interrogatories at 3, Plaintiff's Supp.App. at 150. On another occasion, plaintiff's union steward, Tim Linn, stated: "Fuck FMLA." "You guys on FMLA get to come and go when you want." Plaintiff's Amended Answers to Defendant's First Set of Interrogatories at 2–3, Plaintiff's Supp.App. At 149–50. Linn further stated: "You're fucking your partner out of money every time you're gone. He is having to work with a different partner each day." *Id.* at 3, Plaintiff's Supp.App. at 150. Roger Mills, plaintiff's supervisor, also told plaintiff to "[g]et your ass to work." Hernandez Dep. at 177, Plaintiff's Supp.App. at 140.

■■■■ As set forth above, the Eighth Circuit has recognized only three types of FMLA claims: interference, retaliation and discrimination. *Pulczinski,* 691 F.3d at 1005–06. Even assuming a cause of action for FMLA harassment was sustainable, however, plaintiff has not shown he was damaged monetarily as a result of the harassment. As summarized by the Supreme Court in *Nevada Dept. of Human Resources v. Hibbs,* 538 U.S. 721, 739, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003): the "cause of action under the FMLA is a restricted one: the damages recoverable are strictly defined and measured by actual monetary losses." The allowable damages are set forth in 29 U.S.C. § 2617(a)(1)(A).[12] This is not a case where

---

**12.** Section 2617(a) of the FMLA states that an employer who commits an FMLA violation shall be liable for damages equal to the following:

    (i) the amount of—

        (I) any wages, salary, employment benefits or other compensation denied or lost to such employee by reason of the violation; or

        (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care . . .;

    (ii) the interest on the amount described in clause (I) calculated at the prevailing rate; and

    (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (I) and the interest described in clause (ii).

29 U.S.C. § 2617(a)(1)(A).

the alleged harassment was sufficiently severe that he was constructively discharged. Short of a constructive discharge, damages for emotional distress are not authorized. *See Jackson v. City of Hot Springs,* 751 F.3d 855, 865 (8th Cir.2014) (noting that damages for emotional distress are not recoverable under the FMLA). Accordingly, summary judgment is appropriately granted on plaintiff's claim of "FMLA harassment." [13]

## III.  CONCLUSION

For the reasons outlined above, plaintiff's motion for partial summary judgment is granted in part and denied in part. Defendant's cross-motion for summary judgment is denied in part and granted in part. Specifically, plaintiff is entitled to recover as a matter of law on his claim of FMLA interference. Trial on this claim will be limited to the amount of damages to which plaintiff is entitled as a result of his August 6, 2012 termination, and whether he also is entitled to additional equitable relief, including reinstatement. Defendant's motion for summary judgment is granted with regard to plaintiff's remaining claims.

IT IS ORDERED.

---

**13.** In resisting defendant's motion for summary judgment, plaintiff also raises for the first time that defendant violated the regulations at 29 C.F.R. § 825.300(d)(6) in failing to provide written notice of plaintiff's FMLA leave balance. *See* Plaintiff's Brief in Resistance to Defendant's Motion for Summary Judgment, at 20. Plaintiff's argument is neither well-developed nor timely. Accordingly, summary judgment is appropriately granted with regard to this claim. *See, e.g., Rodgers v. City of Des Moines,* 435 F.3d 904, 910 (8th Cir.2006) (noting "the district court properly refused to consider unpled allegations").