# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2585
_____

Joe Pulczinski,

*Plaintiff - Appellant,*

v.

Trinity Structural Towers, Inc.,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: March 14, 2012
Filed: August 31, 2012

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Joe Pulczinski sued his employer, Trinity Structural Towers, Inc. ("Trinity"), alleging that Trinity discriminated against him on the basis of his son's disabilities, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. He also alleged a violation of his rights under the Family and Medical Leave Act

("FMLA"), 29 U.S.C. § 2601 *et seq*. The district court[1] granted summary judgment in favor of Trinity, and we affirm.

## I.

In this review of a summary judgment, we describe the facts in the light most favorable to Pulczinski. Pulczinski worked as a lead painter for Trinity at its facility in Newton, Iowa, from November 2008 until his termination on March 5, 2010. In this capacity, he provided guidance and work direction in the paint department.

Pulczinski's son, Anthony, suffers from cerebral palsy and severe asthma. On November 11, 2009, Pulczinski spoke to Amy Roussin, Human Resources Manager at the Newton plant, about taking occasional FMLA leave to care for Anthony. Trinity sent Pulczinski a "Notice of Eligibility and Rights & Responsibilities" that required him to justify his request for leave by November 26. Pulczinski did not submit the paperwork until December 17.

On November 14, Pulczinski missed work to care for Anthony. Trinity classified this as a "personal unexcused" absence. On December 4 and 5, Pulczinski again missed work to care for his son, and he accrued "attendance points" for these absences. Because the number of attendance points assessed against Pulczinski justified termination under company policy, Trinity suspended Pulczinski with pay in order to investigate his absence. On December 22, however, the company retroactively designated the early-December absences as permissible leave under the FMLA, reduced Pulczinski's attendance points, and allowed him to return to work having determined that he was absent to take care of his son on those dates because

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

he was sick or incapacitated. Pulczinski later requested and received FMLA leave for February 1 and 2, 2010.

During the course of Pulczinski's employment, Trinity sometimes asked its employees to work voluntary overtime. When the company's workload required weekend work, one of Trinity's supervisory employees, David Thornton, sought volunteers. Because Pulczinski was the only lead painter on his shift, he was required to work overtime whenever someone in his department volunteered.

On Friday, February 19, Thornton informed Pulczinski that several of his coworkers had volunteered for overtime work on Saturday, February 20, and that he would be required to work as well. Both Thornton and Galen Bientema, a coworker of Pulczinski, testified that they spoke later that day. Bientema told Thornton that he believed Pulczinski was planning a trip to a casino on Saturday, and that he would not appear for work. Bientema also told Thornton that Pulczinski had invited Bientema to go to the casino.

On February 20, Pulczinski's son experienced an adverse reaction to his asthma medication. Pulczinski's wife was unavailable to care for Anthony, and Pulczinski believed that he might have to take his son to the hospital. He informed Trinity, by calling both the company's "call-in" line and Thornton, that he would not come to work that evening. Thornton testified that because of what Bientema had told him about Pulczinski's planned visit to a casino, he was not surprised when he received Pulczinski's call.

Trinity conducted a formal investigation into Pulczinski's absence. The investigation was led by Larry Freeman, manager of the Newton plant, and Roussin. On February 26, Freeman informed Pulczinski that he was suspended pending the outcome of the investigation. During the investigation, Trinity obtained a written statement from Bientema. Bientema averred that Pulczinski said on February 18, he

was not coming to work on February 20 and encouraged Bientema not to come to work either. The company also interviewed Brian Fisher, another of Pulczinski's coworkers. Fisher told Trinity that Pulczinski became upset when employees on his shift volunteered to work overtime. Fisher informed investigators that no one from his department wanted to volunteer for weekend overtime, because they would "hear it from" Pulczinski.

Following the investigation, Roussin and Freeman prepared a report that summarized their findings and recommended that Trinity terminate Pulczinski for attempting to cause a slowdown in work by discouraging others from working overtime. The report was submitted to Quynh Dien, Trinity's Divisional Human Resources Manager. Kerry Cole, Trinity's President, had the ultimate authority to terminate employees for major infractions, which included an attempt to slow production. Cole averred that the normal course of business at Trinity was for Dien to communicate recommended adverse employment actions to Cole, and for Cole to approve them if he concurred. Cole did not specifically remember terminating Pulczinski, but testified that "he very well could have been involved." On March 5, Roussin called Pulczinski to inform him that he was terminated.

Pulczinski claims that Trinity's decision to terminate him was motivated by his relationship with his disabled son, in violation of the ADA, 42 U.S.C. § 12112(b)(4). He also claims that Trinity violated his rights under the FMLA, 29 U.S.C. § 2601 *et seq.*, by denying him benefits to which he was entitled and discriminating against him for taking FMLA leave. We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Pulczinski, the nonmoving party. *See McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

-4-

II.

We first consider Pulczinski's claim under the ADA. Pulczinski claims that Trinity terminated him because of his son's disability. The ADA makes it unlawful to deny equal jobs or benefits to a qualified individual "because of the known disability of an individual with whom the qualified individual is known to have a relationship." 42 U.S.C. § 12112(b)(4). Prior to *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), this court seemed to construe "because of" in the ADA to mean that disability must be a "motivating factor" in the employer's decision. *See Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 991 (8th Cir. 2007). The parties have not addressed whether such a "motivating factor" standard can survive the textual analysis of *Gross*, which interpreted "because of" to mean "but for" causation in the Age Discrimination in Employment Act. 557 U.S. at 176. We have our doubts about the vitality of the pre-*Gross* precedent, *see Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317-21 (6th Cir. 2012) (en banc), but as the issue has not been joined by the parties, it is sufficient to conclude that the district court's judgment should be affirmed even under the more generous "motivating factor" standard. We can reserve a decision on the meaning of "because of" in the ADA for a case in which the issue is briefed.

The district court analyzed Pulczinski's claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010). After determining that Trinity had proffered a legitimate, nondiscriminatory reason for terminating Pulczinski—that Trinity believed he was attempting to incite a work slowdown—the district court concluded that Pulczinski failed to present sufficient evidence that this reason was a pretext for unlawful discrimination. Pulczinski argued that he was not attempting to cause a work slowdown, but the district court ruled that a plaintiff cannot show that an employer's reason is pretextual merely by showing that the employer acted based on an erroneous belief. Rather, the court explained, an

-5-

employee must show that the employer did not honestly believe the legitimate reason that it proffered in support of the adverse action. The court also found Pulczinski's other arguments unconvincing.

A.

Our precedent establishes that the "critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *McCullough*, 559 F.3d at 861-62; *see also Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935-36 (8th Cir. 2006); *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000). Pulczinski argues that this so-called "honest belief rule" should be abandoned. He contends that summary judgment is *per se* inappropriate when an employee presents evidence that an employer's proffered reason for termination is false. Citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993), Pulczinski asserts that it is "black letter law" that proof that an employer's proffered reason is false is sufficient to support a finding of discrimination.

The "honest belief rule" is sound when properly applied, and we adhere to it. To establish a violation of the ADA under § 12112(b)(4), Pulczinski must show that the employer acted "because of" the known disability of Pulczinski's son. In other words, he must prove that the employer was motivated by knowledge of his son's disability. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 (2003). To overcome a motion for summary judgment, therefore, Pulczinski must present sufficient evidence that the employer acted with an intent to discriminate, not merely that the reason stated by the employer was incorrect. Taken alone, that the employer's belief turns out to be wrong is not enough to prove discrimination.

To be sure, *Hicks* held that a factfinder's disbelief of the reasons put forward by the employer, together with elements of the plaintiff's *prima facie* case, may suffice to show intentional discrimination. 509 U.S. at 511. *Reeves* reiterated that "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." 530 U.S. at 147 (emphasis omitted). But Pulczinski's argument misunderstands what it means to prove the falsity of the employer's explanation. If an employer, in explaining a termination, says it believed that the employee violated company rules, then proof that the employee never violated company rules does not show that the employer's explanation was false. That proof shows only that the employer's belief was mistaken. To prove that the employer's explanation was false, the employee must show the employer did not truly believe that the employee violated company rules.

Pulczinski encourages us to adopt a modified "honest belief" rule employed by the Sixth Circuit. Under that approach, an employer must "establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (internal quotation omitted). In that circuit, an employer's failure to make that showing results in a finding that the employer's proffered nondiscriminatory explanations for its actions were pretextual. *Id.* Like the Seventh Circuit in *Little v. Illinois Department of Revenue*, 369 F.3d 1007, 1012 n.3 (7th Cir. 2004), we reject Pulczinski's suggested approach as inconsistent with the statute. A plaintiff must prove that the employer acted because of a known disability—that is, he must show intentional discrimination. A showing that the employer made a mistaken and unreasonable determination that an employee violated company rules does not prove that the employer was motivated by a known disability. "[E]ven if the business decision was ill-considered or unreasonable, provided that the decisionmaker honestly believed the nondiscriminatory reason he gave for the action, pretext does not exist." *Id.* at 1012.

-7-

Trinity's proffered reason for terminating Pulczinski was its belief that he was discouraging overtime work. Pulczinski argues that there is a genuine issue of fact about whether he truly discouraged overtime work. Proof that he did not discourage overtime work, however, is insufficient by itself to survive summary judgment. Trinity presented uncontroverted evidence that the company received reports from coworkers that Pulczinski intended to skip work to visit a casino, and that he discouraged others to eschew overtime work. Bientema told the company that Pulczinski encouraged him to skip work on February 20. Fisher reported that coworkers felt discouraged from volunteering for weekend overtime because they did not want to "have to hear it from Joe." Even assuming Pulczinski could show that Trinity was wrong to conclude that he went to the casino and discouraged others from working the weekend, it is undisputed that the company's investigation developed information to the contrary from more than one source. It is not our province to determine whether the employer's investigation of alleged employee misconduct reached the correct result, so long as it truly was the reason for the plaintiff's termination. *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998). This is not a case where "[t]he record in support of the employer's conclusion is . . . so sparse, or the employer's conclusion so implausible, that [Pulczinski's] challenge to the *merits* of the decision can create a genuine issue about whether the employer's *motivation* was impermissible." *McCullough*, 559 F.3d at 862. The district court did not err in applying the honest belief rule.

## B.

Even accepting the foregoing analytical framework, Pulczinski contends that Trinity did not articulate a legitimate reason for his termination, because no single individual took responsibility for terminating him. He also contends that because no one person has taken responsibility for deciding to terminate him, a jury could find the company's explanation pretextual.

We are unconvinced by this line of argument, because Trinity presented admissible evidence that detailed the reasons for Pulczinski's termination. That presentation was sufficient to constitute a legitimate, nondiscriminatory reason for the employment action. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). The company produced the written report of Roussin and Freeman, which recommended that the company terminate Pulczinski for attempting to cause a slowdown in work. Cole, who possessed the ultimate authority to terminate Pulczinski, testified that Pulczinski was fired for attempting to incite a work slowdown. That Cole does not specifically remember terminating Pulczinski does not mean that Trinity failed to articulate a legitimate, nondiscriminatory justification. Whether a defendant has met its burden of production involves no credibility assessment. *Hicks*, 509 U.S. at 509.

The purported refusal of individual employees to take ownership of the decision does not make out a sufficient case of pretext. This is not a case in which none of the decisionmakers was willing to accept responsibility for the termination. *Cf. Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1095 (8th Cir. 2007). Roussin and Freeman acknowledged authoring the report that recommended Pulczinski's firing. Roussin called to inform Pulczinski of the termination. It was Cole's duty to approve of terminations in the normal course of business, and he does not remember making the decision to fire Pulczinski. But Cole is based in Dallas, Texas, and he oversees approximately 1,000 employees across five different plants. He did not deny taking the action, and testified that he "very well could have been involved." That the president of the company does not specifically remember approving Pulczinski's termination is not sufficient to show pretext and discriminatory motive.

C.

Pulczinski next claims that Trinity gave shifting explanations for its decision to fire him. Substantial change in an employer's explanation over time can be

evidence of pretext, but an elaboration generally is not. *See Amini v. City of Minneapolis*, 643 F.3d 1068, 1076 (8th Cir. 2011); *Loeb v. Best Buy Co.*, 537 F.3d 867, 873-74 (8th Cir. 2008). Trinity relied consistently on the report prepared by Roussin and Freeman finding that Pulczinski discouraged his coworkers from volunteering for overtime. Roussin, Freeman, and Cole, all testified that Pulczinski was fired because of this attempted slowdown. Trinity did proffer a second reason for terminating Pulczinski—namely, that the company believed he falsified his need for FMLA leave on February 20. But this supplemental explanation is not evidence of a substantial shift. The additional justification is consistent with the company's proffered belief that Pulczinski skipped work on February 20 to visit a casino.

D.

Pulczinski also argues that Trinity's failure to conduct a sufficient investigation could establish pretext. He complains that the company failed to interview every employee who might have had relevant information, including each member of Pulczinski's crew. The appropriate scope of an internal investigation, however, is a business judgment, and we do not review the rationale behind such a decision. *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 859 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester,* 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc). Shortcomings in an investigation alone, moreover, are not enough to make a submissible case. *See Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 643 (8th Cir. 2008). Employers are allowed to make even hasty business decisions, so long as they do not discriminate unlawfully, and there is no evidence here that the company purposely ignored relevant information or otherwise truncated the inquiry because of an animus against Pulczinski due to his son's disability. *McCullough*, 559 F.3d at 863.

III.

We now turn to Pulczinski's claims under the FMLA. The FMLA entitles an employee to twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements. 29 U.S.C. § 2612(a)(1). Two subsections of the statute establish prohibited acts. Section 2615(a)(1) makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights provided under the FMLA. The Act also makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2).

This court has recognized three types of claims arising under these two subsections. The first type, arising under § 2615(a)(1), occurs where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006); 29 C.F.R. § 825.220(b). An employee proceeding on this theory need not show that an employer acted with discriminatory intent. *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005). Our cases sometimes describe this type of claim as an "interference" claim, but that terminology may not illuminate, because *all* prohibited acts under § 2615(a) appear under the heading "*Interference* with rights." For clarity of analysis, we think it helpful to describe this as an "entitlement" claim—an employee claims the denial of a benefit to which he is entitled under the statute.

A second type of claim, arising under § 2615(a)(2), is analogous to retaliation claims that are familiar under Title VII and other federal antidiscrimination statutes. *See, e.g.*, 42 U.S.C. § 2000e-3(a); *Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008); *see* 29 C.F.R. § 825.220(e); 60 Fed. Reg. 2180, 2218 (Jan. 6, 1995) (explaining that the FMLA's "opposition clause is derived from Title VII"). If an

-11-

employee opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave—then the employer may not for that reason take adverse action against the employee who is engaged in the opposition. As under Title VII, this claim is naturally described as a "retaliation" claim.

A third type of claim recognized by this court's precedent arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA. In this scenario, the employer does not prevent the employee from receiving FMLA benefits. Rather, it is alleged that after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment. An employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA. *Sisk v. Picture People, Inc*., 669 F.3d 896, 900 (8th Cir. 2012); *Stallings*, 447 F.3d at 1051. The textual basis for such a claim is not well developed in our cases, but the claim likely arises under the rule of § 2615(a)(1) that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights defined by the FMLA. *See Quinn v. St. Louis Cnty.*, 653 F.3d 745, 754 n.7 (8th Cir. 2011); *Scobey v. Nucor Steel-Ark.*, 580 F.3d 781, 790 n.9 (8th Cir. 2009); *Phillips v. Matthews*, 547 F.3d 905, 913-15 (8th Cir. 2008) (Colloton, J., concurring). To distinguish the "entitlement" claim under § 2615(a)(1), and the "retaliation" claim under § 2615(a)(2), we think it helpful to describe this sort of complaint as a "discrimination" claim. *See* 29 C.F.R. § 825.220(c) ("The [FMLA]'s prohibition against 'interference' prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights.").

A.

Pulczinski first raises what we have described as an "entitlement" claim.  He contends that Trinity interfered with rights to which he was entitled under the FMLA in four ways:  (1) by questioning Anthony's doctor without authorization, in contravention of 29 C.F.R. § 825.307(a), (2) by requiring that he recertify his need for FMLA leave every thirty days, in violation of 29 C.F.R. § 825.308(b), (3) by failing to designate as FMLA leave his absence on November 14, 2009, contrary to 29 C.F.R. § 825.300(d), and (4) by suspending him in December 2009, in violation of 29 C.F.R. § 825.220(a), (c).

We agree with the district court that Pulczinski failed to plead the first two claims in his Second Amended Complaint.  The complaint alleges that "[Trinity] failed to provide [Pulczinski] with the protected leave that the Family Medical Leave Act requires."  It also states that Trinity "interfered with [his] right to take leave under the Family Medical Leave Act."  The complaint says nothing about Anthony's doctor or recertification.  The district court properly refused to consider these allegations. *See, e.g.*, *Rodgers v. City of Des Moines*, 435 F.3d 904, 909-10 (8th Cir. 2006).

Assuming for the sake of analysis that Pulczinski properly pleaded a claim that Trinity deprived him of a statutory entitlement by failing to designate his November 14 absence as FMLA leave, we conclude that Trinity is entitled to judgment.  The FMLA "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  Pulczinski does not allege that he was prejudiced by the misclassification of this absence.  He was not denied compensation or benefits, *see* 29 U.S.C. § 2617(a)(1)(A)(i), and he has not specified any sort of equitable relief that is warranted. *See id*. § 2617(a)(1)(B).  Without more, an allegation that a day of leave was misclassified does not entitle Pulczinski to relief.

Pulczinski also contends that Trinity interfered with his statutory entitlement to leave when it suspended and investigated him in December. Regulations promulgated by the Department of Labor state that the Act prohibits "'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'" *Stallings*, 447 F.3d at 1050 (quoting 29 C.F.R. § 825.220(b)). Pulczinski argues that he need not show that Trinity's actions actually deterred *him* from taking leave, so long as an employee of ordinary firmness would have been discouraged. This is not a correct statement of the law of this circuit. Pulczinski must show that the employer denied him entitlements under the FMLA. *Quinn*, 653 F.3d at 753-54. He has not presented sufficient evidence of such a violation.

B.

Pulczinski next presents what we have described as a "discrimination" claim. Trinity does not dispute the availability of this claim under the FMLA, but contends that Pulczinski's allegations are without merit. Pulczinski argues that Trinity discriminated against him, in violation of FMLA, when it suspended and then terminated his employment. To succeed on this claim, Pulczinski must prove that Trinity was motivated by his exercise of FMLA rights when it took the adverse actions. *See Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006).

This court has considered FMLA discrimination claims under the *McDonnell Douglas* burden-shifting framework that is applied in Title VII cases. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011). To establish a *prima facie* case of FMLA discrimination, an employee must show: (1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action. *Quinn*, 653 F.3d at 754. This court has said that an employee must prove that his exercise of FMLA rights "played a part" in the employer's decision. *See Marez v. Saint-Gobain Containers, Inc.*, Nos. 11-2354, 11-

-14-

2356, 2012 WL 3079223, at *3 n.3 (8th Cir. July 31, 2012); *see* 29 C.F.R. 825.220(c) (adopting a "negative factor" standard).

We affirm the dismissal of Pulczinski's FMLA claim based on his termination for substantially the same reasons that we affirm the dismissal of his ADA claim. Trinity proffered a legitimate nondiscriminatory reason for the action—it believed that Pulczinski violated company policy by encouraging a work slowdown—and Pulczinski presented insufficient evidence to show that the explanation was pretextual.

Pulczinski's suspension was not a materially adverse employment action, so that action by the company cannot support an FMLA discrimination claim. Pulczinski was suspended with pay on December 18, 19, and 21, 2009, while Trinity investigated his absence from work on December 4 and 5. After the investigation concluded, Pulczinski resumed working as a lead painter. An "adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Chappel v. Bilco Co.*, 675 F.3d 1110, 1117 (8th Cir. 2012) (internal quotation omitted). Placement on paid administrative leave pending an investigation does not meet this standard. *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 891-92 (8th Cir. 2005).

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____