# IN THE SUPREME COURT OF IOWA

No. 20–1467

Submitted November 16, 2022—Filed March 31, 2023

**DAVID ALAN FEEBACK,**

    Appellant,

vs.

**SWIFT PORK COMPANY, TROY MULGREW,** and **TODD CARL,**

    Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Marshall County, Bethany Currie, Judge.

Defendants seek further review of the decision of court of appeals that reinstated the plaintiff's age discrimination claim dismissed on summary judgment. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of this case.

Bruce H. Stoltze, Jr. (argued) of Stoltze & Stoltze, PLC, Des Moines, for appellant.

Ruth A. Horvatich (argued) and Aaron A. Clark of McGrath North Mullin & Kratz, PC LLO, Omaha, Nebraska, for appellee.

**WATERMAN, Justice.**

The plaintiff, age sixty, texted his plant manager "FUCK You!" and "Believe who and what you want" shortly after that manager harshly criticized his job performance. The plaintiff was promptly fired, and he sued for wrongful termination, workplace harassment, and age discrimination. The defendants moved for summary judgment on the grounds that this at-will employee was lawfully fired for insubordination. The plaintiff resisted, arguing that he meant to text someone else, the defendants retaliated against him for making safety complaints, profanity was widespread at this workplace, and the employer had a practice of discriminating against older employees. The district court granted summary judgment, dismissing all claims, and we transferred the plaintiff's appeal to the court of appeals, which affirmed two counts but reinstated the age discrimination claim, determining questions of fact precluded summary judgment. We granted the defendants' application for further review.

On our review, we determine that the district court properly granted summary judgment on all claims. We modify the *McDonnell Douglas* burden-shifting framework for summary judgment on discrimination claims under the Iowa Civil Rights Act (ICRA) to align with the causation standard at trial.[1] We adopt and apply the good-faith "honest belief rule"[2] to affirm the employer's decision to terminate the plaintiff for insubordination. The employer's investigation was adequate. While there is a culture of profanity at the

---

[1]*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

[2]*See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002 (8th Cir. 2012).

meatpacking plant, no other employee texted or said "FUCK You!" to the plant manager right after his negative performance review. While the plaintiff named other older employees who had been terminated over several decades, he had no direct evidence or any expert statistical analysis to show a company practice of discriminating against older workers. We hold this plaintiff lacked proof sufficient to raise a jury question on age discrimination.

**I. Background Facts and Proceedings.**

We review the record in the light most favorable to the plaintiff. David Alan Feeback worked for Swift Pork Company (Swift) for nearly thirty years, beginning in 1988 as a production worker at its Marshalltown pork processing plant. He rose through the ranks and ultimately was promoted to a middle management position there as cut floor supervisor. He held that position in 2015 at age sixty. Feeback was an at-will employee with no employment contract. He received mostly positive employment reviews through 2014. He received a raise and bonus in 2015.

In May 2015, Feeback complained to his direct supervisor, Todd Carl, about unsafe working conditions on the cut floor. Feeback reported the trolleys that transported hog carcasses from coolers to the cut floor were old and worn out, and their poor condition allowed carcasses to slide off. Feeback warned that workers could be injured by a falling carcass. Carl responded by emphasizing high replacement costs and abruptly ended their conversation. When Feeback raised the issue again in a phone call a few weeks later, Carl hung up mid-conversation. Although Feeback did not raise that safety issue again, their

conflict broadened to other issues. Carl accused Feeback of being "asleep at the wheel" and letting his department run "out of control." Troy Mulgrew, Swift's general manager, also displayed hostility. Mulgrew once interrupted Feeback's bathroom break, accusing him of "fucking around" in there. In early December, Mulgrew reprimanded Feeback for missing a safety meeting; Carl said nothing in Feeback's defense even though Carl had approved Feeback's absence.

Their conflict came to a head on December 31. Feeback scheduled a safety meeting for that afternoon because his department had not completed its required annual safety training. Swift usually let employees go home early on New Year's Eve. Mulgrew pulled rank, called off the safety meeting, sent the employees home for the holiday, and summoned Feeback and Carl to his office. Mulgrew criticized Feeback at length. Mulgrew emphasized that Feeback's department had the highest absenteeism rate; Feeback replied that his department also had the lowest turnover rate. Mulgrew told Feeback that he should be listening with his "mouth shut and his arms open." Mulgrew said another employee quoted Feeback as saying Mulgrew was the worst manager Feeback ever had. Feeback said nothing more, and the meeting ended.

Later that evening, at 5:42 p.m., Feeback sent two text messages to Mulgrew. The first said, "FUCK You!" The second said, "Believe who and what you want." Feeback did not follow up with any text or other communication apologizing or claiming he sent Mulgrew those texts by mistake. Before that New Year's Eve, the last time Feeback had texted Mulgrew was September 15.

That same evening, Mulgrew sent a screenshot of Feeback's messages to Pete Charboneau, Swift's HR Director, and to Carl. Charboneau interviewed Feeback the next morning. Feeback admitted that he sent the texts to Mulgrew but contended "it was by mistake" and that he meant to send those texts to a friend instead. Charboneau asked Feeback why, if that was the case, he did not rescind the messages or contact Mulgrew to explain and apologize. Feeback replied that he did not know how to rescind a text and hadn't seen Mulgrew yet that morning to explain. Charboneau suspended Feeback on the spot and continued his investigation.

On January 4, 2016, Swift terminated Feeback's employment. According to Charboneau, Feeback was fired because of the offensive text he sent Mulgrew. Meanwhile, Swift had already begun replacing the old trolleys, addressing the safety issue that Feeback raised earlier. At this time, Swift's Marshalltown facility employed more than 100 individuals who were age sixty or older. Feeback would have been eligible to retire within two years. Swift filled his position with another longstanding employee, a fifty-year-old man.

Feeback sued Swift, Mulgrew, and Carl (collectively Swift) alleging age discrimination, retaliation, workplace harassment, and wrongful termination in violation of public policy. At his deposition, Feeback admitted that he sent the inappropriate text messages to Mulgrew on New Year's Eve but asserted they were meant for a friend. Feeback admitted that he never re-sent the messages to that friend. He never provided any context to explain why he meant to text those words to his friend. He also admitted that he had no personal knowledge that

any other Swift employees had been terminated because of their age. He never claimed anyone at Swift mentioned his age in connection with his termination or job performance.

Feeback subsequently withdrew his retaliation claim. Swift moved for summary judgment on his three remaining claims. In resisting the motion, Feeback submitted an affidavit that included a list of Swift employees over the age of fifty-five who had been terminated, demoted, or forced out since 1994 and a list of employees who had used profanity at Swift. The district court granted summary judgment in favor of Swift on all claims. The district court determined that his evidence of workplace harassment—negative comments by Carl and Mulgrew—was insufficient to show a hostile work environment. The district court concluded that Feeback's claim of wrongful discharge in violation of public policy failed because he lacked evidence that his safety complaints were a determinative factor in his discharge. The court noted Feeback's last complaint about the trolley was seven months before his termination and Charboneau was unaware of Feeback's safety complaints.

Addressing the age discrimination claim, the district court noted that "Mr. Feeback has offered no direct evidence of discrimination" and "does not allege that he was ever subjected to any age-related comments." The court observed Feeback relied "on indirect evidence of discriminatory motive." Accordingly, the court applied the *McDonnell Douglas* burden-shifting analysis on summary judgment. The court assumed based on his age, job qualifications, and termination that Feeback met his initial burden to make "out a prima facie

case of age discrimination." Next, the court determined that "Swift articulated a legitimate, nondiscriminatory reason for Mr. Feeback's termination: misconduct for swearing at a supervisor via text message." The district court reviewed the record, including evidence of profanity of other employees and older workers who had been demoted or terminated. The court concluded that Feeback "failed to present sufficient evidence from which a reasonable jury could infer that Swift's legitimate, nondiscriminatory reason for termination was pretextual and age discrimination was Swift's actual reason for termination."

Feeback appealed, and we transferred the case to the court of appeals, which affirmed summary judgment on his claims for workplace harassment and wrongful termination in violation of public policy. The court of appeals reversed summary judgment on the age discrimination claim, concluding that a genuine issue of material fact existed about "who[m] Feeback *meant* to text" and that inferences of discrimination arose from the brevity of Swift's investigation, the culture of workplace profanity, and the number of other older workers who had been terminated or demoted. Swift applied for further review; Feeback resisted. We granted further review.

**II. Standard of Review.**

We exercise our discretion to limit our review to the age-discrimination claim. The decision of the court of appeals shall stand as the final opinion in this appeal affirming summary judgment dismissing Feeback's claims for workplace harassment and wrongful termination in violation of public policy. *See Papillon v. Jones*, 892 N.W.2d 763, 769 (Iowa 2017).

"We review summary judgment rulings for correction of errors at law." *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 800 (Iowa 2019) (quoting *Deeds v. City of Marion*, 914 N.W.2d 330, 339 (Iowa 2018)). "Summary judgment is proper when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *Id.* (quoting *Deeds*, 914 N.W.2d at 339). "We view the record in the light most favorable to the nonmoving party." *Id.* (quoting *Deeds*, 914 N.W.2d at 339).

**III. Analysis.**

Feeback lacks direct evidence that Swift fired him because of his age. Rather, Feeback relies on indirect evidence in attempting to raise an inference of discrimination. The parties disagree whether the *McDonnell Douglas* analytical framework should be applied on summary judgment for his age discrimination claim under the ICRA. We first address that question and modify the framework for summary judgment on ICRA discrimination claims to align with the causation standard at trial. We then review the summary judgment record and determine that Feeback failed to generate a genuine issue of material fact precluding summary judgment on his age discrimination claim.

**A. Whether the District Court Erred by Using the *McDonnell Douglas* Framework for Summary Judgment.** The district court applied the *McDonnell Douglas* burden-shifting framework in granting Swift's motion for summary judgment on age discrimination. Feeback argues that framework should no longer be used; Swift argues that framework still controls. In *Hawkins v. Grinnell Regional Medical Center*, we abandoned use of the *McDonnell Douglas* analysis

*at trial* when instructing the jury on ICRA discrimination and retaliation claims. 929 N.W.2d 261, 272 (Iowa 2019). We directed our state trial courts to apply the *Price Waterhouse* motivating factor causation test when instructing the jury. *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified at 42 U.S.C. § 2000e–2(m))). We also approved the "same-decision defense" adopted in *Price Waterhouse* "if properly pled and proved" by the defendant. *Id.* Accordingly, for cases that go to trial,

> when an employee proves discrimination was a motivating factor in the employer's actions, the employer could avoid liability "by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender [or other protected characteristics] into account."

*Id.* (alteration in original) (quoting *Price Waterhouse*, 490 U.S. at 258).

*Hawkins* did not address the continued use of the *McDonnell Douglas* framework *at summary judgment,* and we subsequently made clear that "[w]e did not disturb our prior law as it applies to summary judgment" in *Hedlund v. State*, 930 N.W.2d 707, 719 n.8 (Iowa 2019). In *Hedlund,* we applied the *McDonnell Douglas* framework in affirming summary judgment dismissing an age discrimination claim. *Id.* at 722–23. We also held Hedlund's age discrimination claim failed "outside of the *McDonnell Douglas* framework." *Id.* at 723. We left open the question whether the *McDonnell Douglas* framework should be used on summary judgment going forward. *See id.* at 719 ("We do not need to decide this issue because, either way, we conclude that Hedlund has failed to raise a genuine issue of material fact.").

Three justices dissented in part, concluding that we should join other courts in abandoning the *McDonnell Douglas* framework at summary judgment so that the same causation standard applies at summary judgment and trial. *See id.* at 726–35 (Appel, J., concurring in part and dissenting in part, joined by Cady, C.J. and Wiggins, J.). Feeback relies on the *Hedlund* dissent to argue we should abandon the *McDonnell Douglas* framework for summary judgment. Swift relies on the *Hedlund* majority to urge that we retain it.

We now modify the *McDonnell Douglas* framework for summary judgment on ICRA discrimination claims that rest on indirect evidence. We do so to align the summary judgment test with the mixed-motive causation standard and the same-decision defense at trial. Under our modified *McDonnell Douglas* test, employees "must carry the initial burden of establishing a prima facie case of age discrimination." *Id.* at 720 (majority opinion). Employees do so by showing that they are members of a protected group (i.e., age sixty), were qualified for their positions, and the circumstances of their discharge raised an inference of discrimination. *See id.*; *Rumsey v. Woodgrain Millwork, Inc.*, 962 N.W.2d 9, 22 (Iowa 2021); *see also Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 937 (8th Cir. 2019). Then, the employer must " 'articulate some legitimate, nondiscriminatory reason' for its employment action."[3] *Hedlund*, 930 N.W.2d at 720 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see Hawkins*,

---

[3]The district court correctly ruled that Swift proffered a legitimate, nondiscriminatory reason for terminating Feeback: insubordination. *See Hedlund*, 930 N.W.2d at 720 (holding that communicating "negative and disrespectful messages" about the leadership team provided a "legitimate, nondiscriminatory reason[]" for terminating Hedlund).

929 N.W.2d at 272. At that point, the burden shifts back to the employee to demonstrate the employer's proffered reason is pretextual or, while true, was not the only reason for his termination and that his age was another motivating factor. *Hawkins*, 929 N.W.2d at 272.

Iowa Rule of Civil Procedure 1.981(5) provides a compatible burden-shifting framework on summary judgment:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered.

And as we have long emphasized,

> The resistance must set forth specific facts which constitute competent evidence showing a *prima facie* claim. By requiring the resister to go beyond generalities, the basic purpose of summary judgment procedure is achieved: to weed out "[p]aper cases and defenses" in order "to make way for litigation which does have something to it."

*Slaughter*, 925 N.W.2d at 808 (alteration in original) (quoting *Thompson v. City of Des Moines*, 564 N.W.2d 839, 841 (Iowa 1997)). To serve that salutary purpose, we reiterate,

> Summary judgment is not a dress rehearsal or practice run; "it is the put up or shut up moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events."

*Id.* (alteration in original) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

Today's case is a textbook example illustrating the burden-shifting function. Swift filed a motion for summary judgment supported by affidavit and deposition testimony showing Feeback was terminated for insubordination: a legitimate, nondiscriminatory reason. Under both rule 1.981(5) and the modified *McDonnell Douglas* test, to survive summary judgment, Feeback had to show he had admissible evidence to establish Swift's proffered reason was a pretext for age discrimination and his age was a motivating factor for his termination. The district court ruled that Feeback fell short; the court of appeals reversed and found he raised genuine issues of fact precluding summary judgment. We turn now to the summary judgment record.

**B. Whether Any Genuine Issue of Material Fact Precluded Summary Judgment on Feeback's Age Discrimination Claim.** The district court concluded that Feeback failed to show he had sufficient evidence to convince a reasonable jury that Swift's proffered reason for terminating him, insubordination, was a pretext for age discrimination. Feeback argued, and the court of appeals agreed, that he raised fact questions precluding summary judgment in several ways: (1) his insistence that Mulgrew was an unintended recipient and Swift's "hasty" decision to fire him after Charboneau's brief investigation; (2) swearing was common at the workplace; and (3) many older workers had been terminated, demoted, or forced out. We address each claim in turn, and we conclude that Feeback failed to generate a genuine issue of material fact precluding summary judgment on his age discrimination claim.

1. *The "mistake theory," the brevity of Swift's investigation, and the honest belief rule.* Feeback was fired for insubordination four days after he sent Mulgrew the offensive texts. Charboneau, as HR director, handled the investigation and concluded Feeback was insubordinate. The court of appeals determined the brevity of Charboneau's investigation and Feeback's denial that he intended the texts for Mulgrew raised an inference that insubordination was a pretext. The court of appeals stated,

> No doubt, insubordination could prompt a termination. But there's a fact question about who Feeback *meant* to text. As soon as he was confronted by Charboneau, Feeback insisted Mulgrew was an unintended recipient. And other evidence arguably supports the mistake theory. One of the two messages did not make perfect sense in context. Granted, Mulgrew had rebuked Feeback earlier that day. But the central dispute did not revolve around competing versions of the truth. So the second text—"Believe who and what you want."— did not fit with the conversation. Indeed, Mulgrew later agreed the second message seemed off and there could have been a "possible" alternative recipient.

We disagree that this "mistake theory" or the short duration of Charboneau's investigation raise a jury question on pretext.

Charboneau did not have much to investigate. Mulgrew told him he received the texts after he chewed out Feeback for poor performance that day. Feeback admitted he sent the two texts to Mulgrew, beginning with "FUCK You!" that evening. Charboneau considered Feeback's claim he intended both texts for a friend; he also considered the undisputed fact Feeback made no effort that evening to apologize or explain to Mulgrew the texts were meant for another person. Feeback admitted he did not actually re-send either text to the intended friend. He never explained why he meant to text those words to a friend on New

Year's Eve. And Feeback admitted the last time he texted Mulgrew was over three months earlier, minimizing the possibility that Feeback accidentally typed those texts on an existing thread with Mulgrew already displayed on his phone. And the second text, "Believe who and what you want," actually does make sense in context because Mulgrew had rebuked Feeback for telling another worker that Mulgrew was the worst boss Feeback ever had (an allegation Feeback did not deny). The second text can be read as suggesting Mulgrew believed whoever told him Feeback badmouthed him behind his back. Charboneau testified he concluded Feeback had been insubordinate. The facts reasonably support that conclusion.

The question is not whether Feeback sent the texts accidentally; the question is whether Charboneau had a good-faith honest belief that Feeback was insubordinate. He did. We now adopt and apply the "honest belief rule." *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002 (8th Cir. 2012). As the United States Court of Appeals for the Eighth Circuit explained:

> Our precedent establishes that the "critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge."

*Id.* (quoting *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861–62 (8th Cir. 2009)). To survive summary judgment, Feeback "must show that [his] employer did not honestly believe the legitimate reason that it proffered in support of the adverse action." *Id.* Feeback made no such showing.

Nor does the brevity of Charboneau's investigation support an inference of discrimination. "The appropriate scope of an internal investigation . . . is a business judgment, and we do not review the rationale behind such a decision." *Id.* at 1005. "Shortcomings in an investigation alone, moreover, are not enough to make a submissible case." *Id.* "Employers are allowed to make even hasty business decisions, so long as they do not discriminate unlawfully." *Id.* There was nothing more for Charboneau to investigate; he interviewed the people involved; he had the texts, their context and timing, and Feeback's admissions that he sent the texts from his phone to Mulgrew shortly after he chewed him out. Charboneau was not required to believe Feeback's claim that the texts were intended for another. "Employment discrimination laws grant us no power 'to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, *except* to the extent that those judgments involve intentional discrimination.' " *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 695 (Iowa 2022) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)). The court of appeals erred by holding that Feeback's mistake theory or the brevity of Charboneau's investigation raised a jury question on whether insubordination was a pretext for age discrimination.

2. *The culture of profanity at the meatpacking plant.* No one should be surprised that Feeback had evidence swearing was commonplace at Swift's Marshalltown meatpacking facility. He offered names of seventy-three other employees who cursed, sometimes in the presence of supervisors, who were not disciplined for their foul language. Mulgrew himself cursed at Feeback. The court

of appeals held that because profanity was commonplace, a jury could find Swift's proffered reason for firing Feeback was a pretext for age discrimination. We disagree. Nobody besides Feeback texted "FUCK You!" to the plant manager after a negative performance review.

We agree that a "common approach to show pretext is to introduce evidence that the employer treated similarly-situated employees in a disparate manner." *Beasley*, 933 F.3d at 938. "However, 'the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous.' " *Id.* (quoting *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (en banc)). Indeed, the Eighth Circuit recently reiterated that "individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Gardner v. Wal-Mart Stores, Inc.*, 2 F.4th 745, 750 (8th Cir. 2021) (quoting *Johnson*, 769 F.3d at 613).

In our view, Feeback must prove that he and "the other employees were 'similarly situated in all relevant respects.' " *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (quoting *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir. 1988), *abrogated by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc)). But Feeback need not show the other employees committed "the exact same offense." *Id.* (quoting *Lynn*, 160 F.3d at 488). Rather, he must establish that he "was treated differently than other employees whose violations were of *comparable seriousness*." *Id.* (quoting *Lynn*, 160 F.3d at 488). Feeback failed to make that showing. There is a big difference

between swearing around a boss and texting "FUCK You!" to the boss after he chewed you out. Feeback identified no other Swift employee who committed an offense of comparable seriousness without being terminated. The court of appeals erred in concluding that a culture of profanity at Swift supports an inference that its proffered reason (insubordination) for terminating Feeback was a pretext for age discrimination.

The United States Court of Appeals for the Sixth Circuit addressed a similar culture-of-profanity claim in *Hausler v. General Electric Co.*, 134 F. App'x 890 (6th Cir. 2005). Hausler yelled, "Fuck you. That's bullshit," directly at his supervisor and was terminated from employment three days later. *Id.* at 891. He sued for age discrimination and argued that because profanity was common at the workplace, the employer's proffered reason for terminating him (insubordination) was a pretext for age discrimination. The district court granted summary judgment dismissing Hausler's age discrimination claim. *Id.* at 892. The facts, procedural posture, and arguments of the parties are strikingly similar to Feeback's case:

| Feeback | Hausler |
|---|---|
| 60 years old; employed 30 years at Swift | 49 years old; employed 20 years at G.E. |
| Had argument with supervisor | Had argument with supervisors |
| Texted, "FUCK you!" and "Believe who and what you want," to plant manager | Yelled, "Fuck you. That's bullshit," at supervisor |
| Terminated four days later | Terminated three days later |
| Sued for age discrimination | Sued for age discrimination |
| District court granted summary judgment for employer | District court granted summary judgment for employer |
| District and appellate courts applied *McDonnell Douglas* | District and appellate courts applied *McDonnell Douglas* |

| Evidence of rampant profanity in the workplace did not establish a genuine issue of material fact on pretext when plaintiff directed profanity at supervisor | Evidence of rampant profanity in the workplace did not establish a genuine issue of material fact on pretext when plaintiff directed profanity at supervisor |
|---|---|

*See id.* at 890–94.

The Sixth Circuit squarely rejected Hausler's contention that profanity was so common in the workplace that there was a fact question on pretext; that is, whether he was terminated for his age, not for insubordination. *Id.* at 893. The Sixth Circuit concluded there is a difference between swearing generally and swearing *at* the supervisor. *Id.* The same is true for Feeback.

3. *Other older management employees who were forced out since 1994.* The court of appeals agreed with Feeback that he raised an inference of discrimination by identifying other older employees who suffered adverse employment actions. Like the district court, we conclude this evidence was insufficient to avoid summary judgment.

Feeback's affidavit named nine people over age fifty-five who were fired or demoted after 1994. But Feeback admitted in his deposition that he lacked personal knowledge as to whether specific employees were terminated because of their age. Under the "contradictory affidavit rule," the district court appropriately disregarded his affidavit testimony about other employees. *See Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 339 (Iowa 2020) ("The essence of this rule is that there is no genuine issue of fact because the deposition testimony precludes consideration of contradictory affidavits.").

Feeback does not claim he was personally involved in management's decision to fire or demote these individuals. Apart from their ages, he offered no direct evidence that age was the motivating factor for their terminations or demotions. Feeback's unsupported speculation that these individuals were forced out because of their age is insufficient to raise a jury question. *See Godfrey v. State*, 962 N.W.2d 84, 106 (Iowa 2021) ("Godfrey's personal, conclusory beliefs are insufficient as a matter of law to generate a fact question for the jury."); *see also Hausler*, 134 F. App'x at 894 (agreeing with the district court that evidence supervisor "disproportionately disciplined [three] older workers . . . was insufficient to create an issue of fact as to pretext because the statistical sample was too small and because the majority of employees under [his] supervision were over forty years old"); *McIntosh v. Country Club of Little Rock*, No. 4:17–cv–757–DPM, 2019 WL 2618145, at *1 (E.D. Ark. June 26, 2019) (granting motion for summary judgment and stating that although plaintiff pointed out the Country Club fired four other older employees, "there's no evidence that these employees were fired because of their age"); *Prochaska v. Color-Box, L.L.C.*, No. C04–1009–LRR, 2005 WL 1410846, at *12 (N.D. Iowa June 1, 2005) (granting summary judgment on age discrimination claim and rejecting argument that plaintiff's list of other older employees who were terminated created fact question on pretext when he admitted he lacked firsthand knowledge about the reasons for their adverse employment decisions).

Feeback offered no expert testimony or statistical evidence that this management-level turnover over that span of decades was unusual for a

meatpacking plant of Swift's size. It is undisputed that Swift employed more than 100 employees age sixty or older when Feeback was terminated. Feeback's affidavit testimony about what happened to other older employees failed to raise a jury question on age discrimination.

**IV. Disposition.**

For the foregoing reasons, we vacate the decision of the court of appeals on Feeback's age discrimination claim and affirm its decision on the remaining claims. We affirm the district court's summary judgment on all claims.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.**

All justices concur except May, J., who takes no part.